UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 22, 2024

LETTER TO ALL COUNSEL OF RECORD

Re: *Niccole N. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
Civil No. 23-0786-CDA

Dear Counsel:

On March 23, 2023, Plaintiff Niccole N. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 13 & 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on December 30, 2019, alleging a disability onset of December 1, 2018. Tr. 298-99. Plaintiff's claims were denied initially and on reconsideration. Tr. 143-52. On May 19, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 63-90. Following the hearing, on June 29, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 37-62. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on March 23, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Niccole N. v. O'Malley*
Civil No. 23-0786-CDA
March 22, 2024
Page 2

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2018 through her date last insured of December 31, 2020[.]" Tr. 43. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "neurodegenerative disorder; traumatic brain injury (TBI); neurodevelopmental disorder; neurocognitive disorder; depressive disorder; and anxiety disorder[.]" Tr. 44. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 44. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; no balance as defined in the *Selected Characteristics of Occupations* ("*SCO*").[] She can tolerate no more than occasional exposure to bright sunlight, loud noise, extreme temperatures, fumes/dusts/odors/gases/poor ventilation; no exposure to hazards, such as moving machinery and unprotected heights; she can understand, remember and carry out simple 1 to 3 step instructions and tasks; can experience a low level of work pressure by which I mean: work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in work setting, or more than occasional contact with the public as part of the job duties; no public contact by phone or in person; occasional interaction with coworkers; and may experience lack of concentration at times resulting in loss of productivity up to 5% of the workday.

Tr. 46. The ALJ determined that Plaintiff was unable to perform past relevant work as a Human Resources Advisor (DOT[3] #166.267-046), Human Resources Director and Manager (DOT

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and

#166.117-018) but could perform other jobs that existed in significant numbers in the national economy. Tr. 53-54. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 55.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises one argument on appeal, specifically that the ALJ's RFC determination is unsupported by substantial evidence on the record. ECF 11, at 4. Plaintiff contends that the ALJ committed harmful error because it is unclear how the ALJ determined that Plaintiff may experience lack of concentration at times resulting in loss of productivity up to 5% of the workday. ECF 11, at 11. Defendant counters that the ALJ adequately explained her RFC assessment with specific reference to Plaintiff's 5% time off task limitation. ECF 13, at 5.

An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 416.945(a). "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).

When performing the RFC assessment, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.); *see White v. Comm'r, Soc.*

---

explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Sec. Admin.*, No. SAG-16-2428, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017) (internal citation omitted) (stating that to satisfy the function-by-function analysis requirement, the ALJ must include a "narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), as amended (Dec. 13, 2000); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original and internal quotation marks omitted) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate logical bridge from [that] evidence to his conclusion.").

If an ALJ chooses to include a specific off-task time limitation in the RFC, a narrative explanation must be included. "[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday." *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018). However, if an ALJ specifies an off-task time that a claimant will be able to perform work-related tasks, the ALJ must adequately explain that determination with reference to the record. *Abdul K. v. Kijakazi*, No. BAH-21-2434, 2022 WL 2789363, at *2-3 (D. Md. July 15, 2022); *see, e.g.*, *Fisher v. Comm'r, Soc. Sec.*, No. RDB-17-3165, 2018 WL 3348858, at *3 (D. Md. July 9, 2018) ("The ALJ, however, provided no support or explanation for this extremely specific [off-task time] conclusion."); *Carter v. Berryhill*, No. 17-4399, 2018 WL 4381275, at *12 (S.D.W. Va. Apr. 11, 2018), *report and recommendation adopted*, 2018 WL 4169108 (S.D.W. Va. Aug. 30, 2018) (remanding where the ALJ "left the court to guess" how the ALJ arrived at the conclusion that the claimant would be off task for 15 percent of the workday).

This Court has, on several occasions, addressed an ALJ's obligations when specifying an off-task time limitation. *See Abdul K.*, 2022 WL 2789363, at *2-3 (remanding when the ALJ failed to explain how the evidence cited translated into a determination that Plaintiff would be off task 10% of the time); *Jennifer M. v. Kijakazi*, No. ADC-21-1491, 2022 WL 2668423 (D. Md. July 11, 2022) (same); *Brian L. v. Comm'r, Soc. Sec. Admin.*, No. DLB-19-197, 2020 WL 1814205, at *3 (D. Md. Apr. 9, 2020) (addressing 5% off-task time limitation); *Williams v. Berryhill*, No. TMD-17-1083, 2018 WL 3092273, at *6 (D. Md. June 22, 2018) (addressing 10% off-task limitation); *Kane*, 2018 WL 2739961, at *1 (same). In each case, the Court required the ALJ to provide an explanation for their limitation findings, specifically why plaintiffs would be off task for a percentage of the workday. In *Kane*, the Court explained that "the assignment of a precise percentage of time off-task constituted a critical part of the disability determination," yet "the ALJ failed to explain how he reached" that conclusion. 2018 WL 2739961, at *1. The Court remanded because "the [vocational expert's ("VE")] testimony rendering the percentage of time off-task [was] potentially work-preclusive," and the ALJ "failed to fulfill the duty of explanation on this issue." *Id.* at *2.

Here, the ALJ determined that Plaintiff had a moderate limitation in concentration, persistence, and pace ("CPP"). Tr. 45. The ALJ described Plaintiff's testimony regarding her "alleged issues with completing tasks, following instructions, and with concentration" and her "struggles with organizing her thoughts and tasks, issues with being overwhelmed and distracted,

and trouble sleeping[.]" *Id.* The ALJ then noted that Plaintiff "[had] normal attention and concentration, she was alert and oriented, and she had good judgement" and Plaintiff could "follow along at the hearing." *Id.* The ALJ found "no more than a moderate limitation [in CPP] . . . [with] some loss of productivity due to lack of concentration." *Id.* Thus, the ALJ included in his RFC that Plaintiff "may experience lack of concentration at times resulting in loss of productivity up to 5% of the workday." Tr. 46.

Then the ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because Plaintiff's "admitted daily activities and abilities do not support a finding of disability." Tr. 51. The ALJ supported this conclusion by stating that "[o]verall, [Plaintiff's] treatment provides benefit and improvements when she is consistent and result in the limitations [in the RFC]." *Id.* Despite these conclusions, the ALJ "[n]onetheless [] included a limitation of loss of 5% productivity in a workday due to the effects of all [Plaintiff's] symptoms as at times she may be distracted causing her to be off task." *Id.* Although this explanation provides support for why the ALJ included an off-task limitation, there is no explanation for the ALJ's decision between 5% and 10% – the latter being work preclusive.

The ALJ found Dr. Sabah Hadi's medical assessment unpersuasive. Tr. 53. Dr. Hadi completed a mental assessment of Plaintiff in 2020 and concluded that Plaintiff would be off-task more than 20% of the workday. *Id.* The ALJ found Dr. Hadi's opinion unpersuasive because there were "[m]inimal explanations", "illegible" treatment notes, and "inconsisten[cies] with the record and [Plaintiff's] largely normal mental status exam findings and improvement with treatment." *Id*; *Ross v. Colvin*, No. 12-0283, 2013 WL 5423980, at *3 (N.D. Tex. Sept. 27, 2013) ("[T]he ALJ must resolve any inconsistencies in the record [and] explain why functional limitations can or cannot be reasonably accepted as consistent with medical or nonmedical evidence[.]") (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).

The ALJ failed to explain how the evidence translated into the specific 5% off task limitation, rather than a higher percentage discussed during the hearing. Tr. 88. The VE opined that although a 5% off task limitation would not preclude jobs, the "critical point" would be 10%, which would preclude all employment. Tr. 88. In fact, upon further clarification by Plaintiff's attorney, the VE opined that if a 10% off task limitation was implemented there would be "no competitive work[.]" Tr. 89. An ALJ is not required to adopt the VE's suggested limitations. *See France v. Apfel*, 87 F.Supp. 2d 484, 490 (D. Md. 2000) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)) ("[A]n ALJ is free to accept or reject restrictions included in hypothetical questions"). But when an increased time off limitation would be work preclusive, thus enabling a finding for disability, the ALJ must include a narrative to support such conclusion. *See Lee*, 2017 WL 3007068, at *8 (internal citation omitted) ("The ALJ's failure to connect his factual findings to his chosen number is particularly disconcerting because . . . the figure he discarded would have meant disability according to the VE's testimony.") On this record, the Court is left to "guess" at how this conclusion came about, *Mascio*, 780 F.3d at 637, and it appears that "the ALJ simply adopted the percentage of time on task the VE testified would be required to sustain substantial gainful employment, without citing any evidentiary basis for that finding." *Jacqueline H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2303, at 3 (D. Md. Apr. 22, 2019).

Defendant argues that Plaintiff has not met her burden of proof on appeal. ECF 13, at 9. While Defendant is correct that Plaintiff bears the burden at this stage, Defendant fails to address that remand is warranted when judicial review is frustrated by an inadequate explanation. *DeLoatche*, 715 F.2d at 150; *see Coffman*, 829 F.2d at 517 (The Court must consider whether the proper legal framework is applied and if it is not, remand is thus warranted). In addition, Defendant does not point to any area of the ALJ's decision where he includes the required narrative discussion. *See generally* ECF 13.

Despite the ALJ's thorough analysis of the case as a whole, he failed to explain how the evidence translated into a determination that Plaintiff would be off-task 5 percent of the time, rather than the potentially work preclusive 10 percent. *See Petry*, 2017 WL 680379, at *2; *Michael K. v. Soc. Sec. Admin.*, No. JMC-18-1038, 2019 WL 1501582, at *2 (D. Md. Mar. 7, 2019) (remanding when the ALJ failed to provide the narrative requirement for a 10% off task despite an "extraordinarily thorough analysis of the case"). This explanation is not only required under SSR 96-8p but significant because an increase in limitation percentage could have precluded all competitive employment. Tr. 89; SSR 96-8p, WL 374184 at *7 (S.S.A.); *see Jeffrey B. v. Saul*, No. GLS-20-1090, 2021 WL 797920, at *3 (D. Md. Mar. 2, 2021) (internal citation omitted) ("The lack of any explanation as to how the ALJ calculated this percentage is significant because a one percent increase could preclude competitive employment."). There being no adequate explanation of the off-task limitation, remand is warranted. *See Beth Ann O. v. Kijakazi*, No. BAH-21-1877, 2022 WL 3360277, at *3 (D. Md. Aug. 15, 2022) ("Defendant ignore[ed] that the Fourth Circuit, and this Court specifically, have regularly held that an ALJ's failure to explain *how* they determined that a claimant would be off task for a specific percentage of the workday precludes meaningful judicial review. Such is the case here and remand is warranted."). In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

### V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge